Floyd W. Bybee, #012651
**BYBEE LAW CENTER, PLC**
90 S. Kyrene Rd., Ste. 5
Chandler, AZ 85226-4687
Office: (480) 756-8822
Fax: (480) 302-4186
floyd@bybeelaw.com

Attorney for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Maria Vitulli; | No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| Dynamic Recovery Services, Inc.; and Equable Ascent Financial, LLC; | |
| Defendants. | (Jury Trial Demanded) |

### I. Preliminary Statement

1.     Plaintiff brings this action for damages based upon Defendants' violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq*. Plaintiff seeks to recover statutory damages, actual damages, costs and attorney's fees.

### II. JURISDICTION

2.     Jurisdiction of this Court, over this action and the parties herein, arises under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. § 1331.  Venue lies

in the Phoenix Division of the District of Arizona as Plaintiff's claims arose from acts of the Defendants perpetrated therein.

### III. PARTIES

3.  Plaintiff Maria Vitulli is a resident of Maricopa County, Arizona.

4.  Vitulli is a natural person who is allegedly obligated to pay a debt which was incurred for personal, family, or household purposes.

5.  Vitulli is a "consumer" as that term is defined by FDCPA § 1692a(3).

6.  Defendant Dynamic Recovery Services, Inc. is a Texas corporation registered to do business within the State of Arizona.

7.  Dynamic is licensed and bonded as a collection agency by the Arizona Department of Financial Affairs, license number 0910903.

8.  Dynamic collects or attempts to collect debts owed or asserted to be owed or due another.

9.  Dynamic is a "debt collector" as that term is defined by FDCPA § 1692a(6).

10.  Defendant Equable Ascent Financial, LLC is a Delaware limited liability company registered to do business within the State of Arizona.

11.  Equable is licensed and bonded as a collection agency by the Arizona Department of Financial Affairs, license number 0918638.

12.  Equable collects or attempts to collect debts owed or asserted to be owed or due another.

13.  In the alternative, Equable collects or attempts to collect debts purchased after default.

14.  Equable is a "debt collector" as that term is defined by FDCPA § 1692a(6).

- 2 -

15. At all times relevant herein, Dynamic acted as an agent of Equable in the collection or attempted collection of a debt from Plaintiff.

16. Dynamic is liable for the actions of its employees and agents acting within the scope of their employment of collecting or attempting to collect debts owed or asserted to be owed or due another.

17. Equable is liable for the actions of its agents, including Dynamic, acting within the scope of their employment of collecting or attempting to collect debts owed or asserted to be owed or due another.

## IV. Factual Allegations

18. Sometime prior to 2006, Vitulli leased a vehicle through Toyota Finance, which was used for personal, family or household purposes.

19. Vitulli fell behind on her payments to Toyota, who then repossessed the vehicle.

20. After the repossession, Vitulli offered to make payments to Toyota to pay off the balance on the debt, but was told by Toyota that it would not accept payments, and that it needed payment in full.

21. In March 2007, Hilco Receivables LLC filed suit in the San Tan Justice Court against Vitulli claiming that it had purchased and was now the owner of Vitulli's Toyota Financial account.

22. Hilco obtained a default judgment against Vitulli on July 9, 2007.

23. Vitulli was never served with the Hilco suit, and did not become aware of it until she was contacted in June 2013 by Defendant Dynamic.

24. At about this same time, upon information and belief, Hilco sold or transferred the judgment to Equable for collection purposes.

25. Upon information and belief, Equable transcribed the justice court

judgment to the Maricopa County Superior Court on October 29, 2007, making it a judgment of the Superior Court.

26.   Prior to the five year anniversary of the entry of judgment, Equable failed to renew the judgment as required by Arizona law.

27.   Thus, the Superior Court judgment expired and became unenforceable at the very latest on October 29, 2012.

28.   In or about 2013, Equable assigned the debt or judgment to Dynamic for collection purposes.

29.   At the time it assigned the account to Dynamic, upon information and belief, Equable failed to notify Dynamic that the judgment was over five years old, had not been renewed and that it had expired and was unenforceable.

30.   In the alternative, at the time it assigned the account to Dynamic, Equable told Dynamic that the judgment was over five years old, had not been renewed, and that it had expired and was unenforceable.

31.   On or about June 11, 2013, Miss Karn, a collector working for Dynamic, telephoned Vitulli's place of employment and left a message for Vitulli with her supervisor.

32.   Shortly thereafter, Vitulli was summoned into her supervisor's office and told that she had just gotten a call from a woman who wanted to speak with her.

33.   Vitulli's supervisor told her that the woman had stated that she was from DRS and that it was important for Vitulli to return her call.

34.   Vitulli's supervisor then gave her a Post-It-Note with Karn's phone number, company name and "case number" that she was to reference

- 4 -

1    when she returned the call. A copy of the Post-It-Note is attached hereto

2    as Exhibit A.

3    35.   Vitulli was very shaken by the incident and started researching the phone

4    number left by Karn.

5    36.   She learned that the phone number belonged to a collection agency,

6    Dynamic.

7    37.   Because she was at work, and was not able to take or make personal calls,

8    Vitulli decided to call Karn the next day to find out what this "case" was

9    about.

10   38.   Vitulli was so stressed and embarrassed upon learning that a collection

11   agency had called and left a message for her with her supervisor, that she

12   was unable to concentrate the rest of the day at work.

13   39.   Vitulli returned Karn's call the next day.

14   40.   When she answered, Karn advised Vitulli that the call was being recorded

15   and that it was in reference to the collection of a debt.

16   41.   Specifically, Karn said that the call concerned a the debt owed to Toyota

17   Financial.

18   42.   Karn also told Vitulli that she had been sued and lost the case, and that

19   she now owed over $13,000.

20   43.   During the call, Karn emphasized to Vitulli that she needed to be aware

21   that Arizona was a "garnishment" state, and that her wages would be

22   garnished if she did not pay the amount due.

23   44.   When Vitulli asked Karn to send her some information concerning the

24   debt, Karn told her that she did not have any information and that she

25   needed to contact the Maricopa County Superior Court to get that

1    information.

2    45.   After speaking with Karn, Vitulli became very emotionally upset, and

3          started to break out.

4    46.   At the time Dynamic threatened Vitulli with wage garnishment, Vitulli

5          was the sole provider for her and her seventy-five (75) year old disabled

6          mother. She knew that if her wages were garnished, both she and her

7          mother would be unable to pay their bills and might lose their home.

8    47.   Over the next few days, Vitulli continued to worry about the wage

9          garnishment and what she could do to avoid it.

10   48.   This worrying caused Vitulli to become physically ill.

11   49.   When she went to work on Monday, June 17, 2013, Vitulli opened her

12         email and saw that her supervisor had sent her an email concerning

13         another call she had received from Karn.

14   50.   Vitulli learned that Karn had called her at work, and had left a voice

15         message on her supervisor's voice mailbox requesting the Vitulli return

16         her call as soon as possible.

17   51.   Vitulli was extremely embarrassed, and apologized to her supervisor for

18         the calls, promising that she would take care of this matter on her own

19         time.

20   52.   Vitulli did not know how she was going to take care the "case" with

21         Dynamic, but worried that if she did not Karn would continue to call her

22         supervisor and leave messages.

23   53.   At the time Dynamic threatened to garnish Vitulli's wages, the judgment

24         Dynamic was attempting to collect on behalf of Equable had expired, and

25         was unenforceable.

- 6 -

54.   At the time Dynamic threatened Vitulli with wage garnishment, it knew or should have known that it could not garnish Vitulli's wages.

55.   At the time Dynamic's collector called Vitulli's work number, it knew that leaving a message with Vitulli's supervisor concerning a "case number" would likely imply to the supervisor that the call concerned the collection of a debt.

56.   At no time has Dynamic or Equable sent Vitulli any written communication concerning this allege debt.

57.   In the messages left with Vitulli's supervisor, Dynamic failed to notify Vitulli that the message was from a debt collector and that it concerned the collection of a debt.

58.   As a result of Defendants' actions as outlined above, Plaintiff has suffered damages including, but not limited to, embarrassment, humiliation, fear, anxiety, invasion of privacy, and other extreme emotional distress.

59.   Defendants' actions as outlined above were intentional, willful, and in gross or reckless disregard of Plaintiff's rights and part of Defendants' persistent and routine practice of debt collection.

60.   In the alternative, Defendants' actions were negligent.

## V. Causes of Action

### a. Fair Debt Collection Practices Act

61.   Plaintiff repeats, realleges, and incorporates by reference the foregoing paragraphs.

62.   Defendants' violations of the FDCPA include, but are not necessarily limited to, 15 U.S.C. §§ 1692c(b), 1692e, 1692e(2)(A), 1692e(4), 1692e(5), 1692e(8), 1692e(10), 1692e(11), 1692f, 1692f(1), and 1692g.

63.   As a direct result and proximate cause of Defendants' actions in violation of the FDCPA, Plaintiff has suffered actual damages.

## VI.  DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues so triable.

## VII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that judgment be entered against Defendants for:

a)   Actual damages under the FDCPA;

b)   Statutory damages under the FDCPA;

c)   Costs and reasonable attorney's fees pursuant to the FDCPA; and

d)   Such other relief as may be just and proper.


DATED  _July 31, 2013_ .


                    s/ Floyd W. Bybee
              Floyd W. Bybee, #012651
              **BYBEE LAW CENTER, PLC**
              90 S. Kyrene Rd., Ste. 5
              Chandler, AZ 85226-4687
              Office: (480) 756-8822
              Fax: (480) 302-4186
              floyd@bybeelaw.com

              Attorney for Plaintiff